UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                          )<br>        Plaintiff,                              )<br>                                                          )<br>v.                                                      )<br>                                                          )<br>STANLEY DOPLE,                         )<br>                                                          )<br>        Defendant.                           ) | No. 6:17-CR-6-GFVT-HAI<br><br>RECOMMENDED DISPOSITION |

*** *** *** ***

The Court, on referral, considers reported supervised release violations by Defendant Stanley Dople. *See* D.E. 47 at 2. District Judge Thomas A. Varlan of the Eastern District of Tennessee entered a judgment against Defendant on December 16, 2015, upon a plea of guilty for failure to register under the Sex Offender Registration and Notification Act ("SORNA") in violation of 18 U.S.C. § 2250(a). D.E. 1-2 at 1. This conviction involved cutting off an ankle monitor and leaving the Eastern District of Tennessee. Defendant received a sentence of thirty months of imprisonment followed by five years of supervised release. *Id.* at 2-3. The underlying conduct that resulted in Defendant's sex offender status involved a 2004 conviction in Tennessee state court for two counts of aggravated sexual battery. Defendant began his first supervised release term on January 27, 2017. Supervision was transferred to the Eastern District of Kentucky on February 28, 2017. D.E. 1.

On June 22, 2017, a Report on Offender Under Supervision was submitted to the Court following Defendant's admission to using marijuana. D.E. 4. The report recommended that no action be taken at that time, which Judge Van Tatenhove approved. *Id.*

On November 7, 2017, Defendant's supervised release was revoked after he stipulated to two charges of use of a controlled substance (marijuana), the resulting commissions of a crime, and the failure to answer all inquiries of the probation officer truthfully. D.E. 14; D.E. 15. He was sentenced to sixteen months of imprisonment, followed by ten years of supervised release. D.E. 15 at 2-3. Defendant was released on November 23, 2018, to begin his second term of supervision.

On August 30, 2019, Defendant's supervised release was revoked after he stipulated to the use of a controlled substance (methamphetamine), resulting commission of a crime, and the failure to answer all questions asked by the probation officer truthfully. D.E. 26; D.E. 27. He was sentenced to eighteen months of imprisonment, followed by ten years of supervised release. D.E. 27 at 2-3. Defendant was released on November 9, 2020, to begin his third term of supervision.

On October 12, 2021, Defendant's supervised release was revoked after he stipulated that he failed to report to his probation officer upon his release from prison following his third period of incarceration in this case. D.E. 45 at 1. Defendant was sentenced to twelve months of imprisonment followed by twelve months of supervised release. *Id*. at 2-3. Defendant was released to begin his fourth period of supervised release on July 25, 2022.

On December 9, 2022, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings and secured an arrest warrant on December 12, 2022. The USPO issued an Addendum to the Supervised Release Violation Report ("the First Amended Report") on December 30, 2022. On October 23, 2023, a second addendum to the Report ("the Second Amended Report") was issued by the USPO. Defendant was arrested on March 8, 2024. The Report charged Defendant with one violation stemming from his indictment in McCreary County, Kentucky in Case No. 22-CR-69 in McCreary

Circuit Court. The violation alleges that Defendant violated Mandatory Condition #1 by committing a federal, state, or local crime and violated Special Condition #8 by failing to register as a sex offender as prescribed by state law. Defendant was specifically charged with "Failure to Comply with Sex Offender Registry." This is a Grade B violation. The First Amended Report added a second violation also based on Defendant's violation of Mandatory Condition #1. The new violation alleged he violated six different Kentucky criminal statutes during his arrest for failing to register as a sex offender, specifically K.R.S. § 520.095 (Fleeing or Evading Police, 1st Degree), K.R.S. § 508.050 (Menacing), K.R.S. § 520.090 (Resisting Arrest), K.R.S. § 508.060 (Wanton Endangerment – 1st Degree – Police Officer), K.R.S. § 508.080 (Terroristic Threatening, 3rd Degree), and K.R.S. § 525.060 (Disorderly Conduct, 2nd Degree).

The citation documenting Defendant's arrest recounts the basis for those charges:

"McCreary County 911 received a call at approximately 15:30 from a residence on Clear [Circle Road] off of Bethel Road in the Pine Knot community of McCreary Co[unty]. Caller stated that Stanley Dople had just left her house, wearing a red and black sweatshirt, and was walking on Clear [Circle] road toward USP McCreary sub power station. Caller stated that Dople had warrants. I checked him for warrants and discovered that he was currently under indictment from McCreary Circuit Court on charges of Failure to Comply w/sex offender registration and was also wanted in NCIC from the US Marshall's Service for the same charges. When I arrived in the area, I canvassed the area was unable to locate him. I left the area and later returned due to a fire in the area with the fire dept. A civilian stopped and ask[ed] me if I was looking for Dople, and stated that he was down the road from Dople's residence next to Bobby Ball [Road] and was hiding behind a brush pile. I attempted to locate Dople at that location and saw him walking behind his residence at 542 Bethel [Road]. I then drove to Perkins [Lane], to the other side of his residence and saw him running back toward Bobby Ball [Road] through the field. He then fled through the field into a wooded area. I entered the wooded area to locate him. I located Dople behind a large tree and gave him loud verbal commands to get on the ground, he did not comply with my commands. He was being very loud and yelling that he was going to kill me. He stated "I will shoot you" several times and then stated "I will stab you" several times. He was concealing himself behind the tree and would not show me his right hand. As he was moving I observed a shinny object emerge from behind the tree, then he moved the opposite direction and I observed the end of a plastic black handle sticking out from his hand. I could not tell what the object was and was still giving him loud verbal commands to show me his hand and to get on the ground, while he yelled "F**k you, I'll Kill You"!! He then yelled to his brother saying "He's going to shoot me". I was able to deploy my [department]

3

issued taser as he stuck the back side of his body out from the tree, I was unable to gain compliance due to the taser not making a good connection. Then I was able to deploy my [pepper] spray to gain control of him. After I sprayed him with [pepper spray], as I approached him he swung at me with the object in his right hand, as I blocked his attempt to strike me with the object I delivered two empty hand strikes to his face. I then took him to the ground delivering a knee strike to his abdominal area, he then dropped the object to the ground. He then resisted as I tried to place him in handcuff. By this time [] Sheriff Randy Waters was on scene and assisted in hand cuffing him. The object he had was about 10 inches long and was a knife sharpener. It could easily been taken as a long fixed blade knife. [] Deputy Alex Jones arrived on scene and transported Dople to [McCreary County] EMS. [][H]e was then transferred to Lake Cumberland Regional Hospital (LCRH) in Somerset KY for treatment of injuries sustained in the incident. I followed EMS as Deputy Jones rode in the ambulance with the prisoner. He was treated and released by LCRH and then transported to Knox County Detention Center by McCreary Co[unty] Transport Officer."

That incident led to Case No. 22-F-182 in McCreary District Court. Case No. 22-F-182 eventually became Case No. 23-CR-9. The violation charged in the First Amended Report is a Grade B violation. The Second Amended Report explained the ultimate disposition in Case No. 22-CR-69 and Case No. 23-CR-9, where Defendant was sentenced to a two-year term of imprisonment. He served this term before rolling over into federal custody for the proceedings described herein.

I.

Magistrate Judge Atkins conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on March 8, 2024. D.E. 49. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing before the undersigned on March 26, 2024, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 54. Defendant waived a formal hearing and stipulated to violation number two that is set forth in the First Amended Report. *Id.* Although Defendant disputed some of the details included in the citation, he specifically admitted to pleading

4

guilty in state court to violations of K.R.S. § 520.095 (Fleeing or Evading Police, 1st Degree), K.R.S. § 520.090 (Resisting Arrest), K.R.S. § 508.060 (Wanton Endangerment – 1st Degree – Police Officer), and K.R.S. § 508.080 (Terroristic Threatening, 3rd Degree) during the final supervised release violation hearing. Based on testimony during the hearing, the Court found that there is a factual basis to conclude that Defendant engaged in conduct amounting to violations of K.R.S. § 520.095 (Fleeing or Evading Police, 1st Degree), K.R.S. § 520.090 (Resisting Arrest), and K.R.S. § 508.060 (Wanton Endangerment – 1st Degree – Police Officer). The Court found Defendant to be competent to stipulate to the violation and that the stipulation was knowingly, voluntarily, and intelligently made. D.E. 54. The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

Recognizing that this was a difficult case, the United States thought that Defendant should receive either a top of the Guidelines sentence or an above-Guidelines sentence. Ultimately, the United States recommended revocation with a twenty-month term of imprisonment. The United States further recommended that Defendant receive no further period of supervised release, considering his lifetime term of community supervision from his Tennessee state conviction. The United States relied both on Defendant's previous revocations and on the seriousness of Defendant's conduct in triggering the revocation proceedings to reach that conclusion. The United

5

States gave particularly strong weight to the violent nature of Defendant's past conduct, and to his demonstrated dangerousness. The United States acknowledged that Defendant's acceptance of responsibility both in state and federal court was a somewhat mitigating factor in this case. A second mitigating factor, in the United States's view, was Defendant's sentence in state court. The United States acknowledged that the Guidelines clarify that revocation is not a punishment for the defendant's underlying conduct, but instead for the defendant's breach of trust. The United States nonetheless explained that these two mitigating factors led it to conclude that a maximum revocation sentence was inappropriate.

    Defense counsel ultimately recommended a within-Guidelines sentence and no further term of supervised release. Defense counsel further asked that Defendant be designated to a federal medical facility due to defense counsel's concerns with Defendant's health. Defense counsel began by clarifying that Defendant's plea in Case No. 22-CR-69 was an *Alford* plea, not a guilty plea. Defense counsel stressed that Defendant has struggled with depression, anxiety, and substance abuse throughout his life. Defense counsel also stressed that Defendant completed his state sentence (which was to run concurrent to any federal sentence) before these federal proceedings progressed. Defense counsel stressed the significant time that Defendant has already spent in the state system for the same conduct that gave rise to these proceedings. Defense counsel confirmed that Defendant was subject to lifetime supervision for his Tennessee state conviction.

    Defendant apologized to the Court and to Probation Officer Beasley. Defendant conveyed that he is not in good health and that he loses family members every time he goes to prison. Defendant asserted that his little brother had stage 2 cancer, and that he thinks he has cancer. Defendant based the assertion that he thinks he has cancer on conversations with a doctor in

6

Lexington. Defendant claimed that he was arrested before he could confirm his cancer diagnosis. Defendant ultimately asked for a bottom of the Guidelines sentence.

II.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to failure to register for the SORNA. See 18 U.S.C. § 2250(a). This is a Class C felony. See 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. See 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade B violation with respect to the stipulated to violation. Given Defendant's criminal history category of IV (the category at the time of his conviction in the Eastern District of Tennessee) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is twelve to eighteen months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range. Consistent with the

guidance of appellate courts, this Court takes the Guidelines-recommended sentence as its starting point and has remained cognizant of it in forming its recommended revocation sentence. *E.g.*, *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The presence of a Grade B violation means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Revocation is appropriate in this case due to the nature of the violation. Neither side argued for a non-revocation penalty.

### III.

The Court has reviewed the entire record, including the Report, First Amended Report, and Second Amended Report, with their accompanying documents. The Court has further considered Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Through that consideration, the Court recommends that Defendant's supervision be revoked and that he be sentenced to an eighteen-month term of imprisonment followed by no federal supervised release.

First, the Court considers the nature and circumstances of the underlying offense. Defendant's underlying offense of failing to register under SORNA was exceptionally serious. Congress has made a decision that individuals such as Defendant need to be monitored to protect the public from future harm. Defendant's failure to comply with Congress's command significantly undermined the public's right to protect itself from sex offenders. This factor warrants a lengthier term of imprisonment.

8

The Court next considers Defendant's history and characteristics. Defendant has repeatedly violated the terms of his supervised release. That demonstrates his inclination to disregard authority. It further indicates that he remains inclined towards reckless behavior, which is particularly troubling given the specifics of his criminal history, and the seriousness with which Congress treats Defendant's past crimes. This factor supports revocation.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence. Defendant's continued disregard for the law, specifically his fleeing from an arresting officer, demonstrates the continued need to teach Defendant the importance of conforming his conduct to the requirements of the law. This factor supports a more punitive sentence.

The Court must also consider whether a defendant needs any education, training, or treatment. Here, Defendant has conveyed that he is in bad health. Further, defense counsel requested a federal medical facility designation due to his concerns about the state of Defendant's health. Thus, the Court will recommend that Defendant be considered for placement at FMC Lexington.

The Court must also seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct. This factor is taken into account here by sentencing Defendant to a within-Guidelines sentence.

In fashioning its recommended sentence, the Court must take into account whether an additional term of supervised release is warranted. Here, an additional term of supervised release is unwarranted due to Defendant's continued community supervision commitment that arises from his state conviction. Due to this continued supervision imposed by his state conviction, there is

no need for duplicative federal supervision. Thus, the Court will recommend that no further federal supervision be imposed in this case.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Here, Defendant's repeated violation of the terms of his supervised release means he has seriously violated the Court's trust. Although defense counsel relied on the time that Defendant served in the state system for this conduct in arguing for a lenient sentence, that time was meant to address Defendant's underlying breach of the law, while this time is meant to address Defendant's breach of the Court's trust. Defendant has earned this additional term of incarceration by breaching the Court's trust, and that breach of trust was not addressed by the state court's sentence requiring Defendant serve a two-year term of incarceration. Defendant's breach of the Court's trust strongly influences its top of the Guidelines recommended disposition.

In short, having considered the above-discussed factors, the Court finds that a term of imprisonment of eighteen months is sufficient but not greater than necessary to address the 18 U.S.C. § 3553(a) factors that are imported into the § 3583(e) analysis.

IV.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of violation number two as set forth in the First Amended Report;

(2) That all other alleged violations be dismissed;

(3) Revocation and imprisonment for a term of eighteen months;

(4) No further term of federal supervised release to follow Defendant's eighteen-month term of incarceration; and

(5) That Defendant be considered for placement at FMC Lexington in light of his current health.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 54. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 28th day of March, 2024.

Signed By:
Hanly A. Ingram
United States Magistrate Judge